UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MARY LEE ZELL-BREIER,**

    **Plaintiff,**

v.        Case No:  6:11-cv-1566-Orl-28TBS

**THE INDEPENDENT ORDER OF FORESTERS,**

    **Defendant.**

_____/

**ORDER**

This case involves a dispute over the payment of death benefits under a life insurance policy.  Plaintiff, Mary Lee Zell-Breier, has filed a Complaint (Doc. 2) against the Independent Order of Foresters ("Foresters") alleging breach of contract for failure to pay death benefits owed under the life insurance policy of her late husband, Robert Zell-Breier ("Mr. Zell-Breier").  In its Answer (Doc. 8), Foresters asserted a counterclaim for rescission of the life insurance contract based on alleged material misrepresentations in Mr. Zell-Breier's life insurance application.  The case is now before the Court on Plaintiff's Motion for Summary Judgment (Doc. 34), Foresters's Opposition and Cross-Motion for Summary Judgment (Doc. 47), Plaintiff's Opposition (Doc. 54), and Foresters's Reply (Doc. 59).  As set forth below, Plaintiff's motion is **GRANTED** with respect to Foresters's liability for breach of contract and Foresters's motion is **DENIED**.

## I. Background

Mr. Zell-Breier completed a life insurance application ("Application") on January 15, 2009. He answered "no" to two questions in the "Medical Questions" section of the Application that asked whether the proposed life insured has:

> In the past 10 years, been diagnosed by a licensed medical practitioner or provider as having, or received treatment for:
>
> (g) *Chronic* hepatitis, pancreatitis, diarrhea, indigestion, colitis, ileitis, abdominal pain, *bleeding*, bowel obstruction or chronic disease of the esophagus, stomach, gall bladder, pancreas, liver, or bowels?
>
> (j) *Depression*, anxiety, schizophrenia, bipolar, obsessive-compulsive and post-traumatic stress?

(Doc. 47-1 at 5 (emphasis added)).

Foresters issued a life insurance policy to Mr. Zell-Breier and he died on April 8, 2010. When Plaintiff submitted a claim for benefits, Foresters investigated the claim and concluded that Mr. Zell-Breier had been diagnosed as having "chronic bleeding" and "depression." Foresters notified Plaintiff on February 2, 2011 that it was rescinding the certificate issued on Mr. Zell-Breier's life and that no benefit would be paid.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable factual inferences in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual

2

evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52).

"[Cross-motions] for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007). "When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant." Adega v. State Farm Fire & Cas. Ins. Co., No. 07–20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct.16, 2009).

### III. Analysis

The central issue in this case is whether Mr. Zell-Breier made a material misrepresentation in his Application by answering "no" to the questions asking if he had been diagnosed by a licensed medical practitioner as having chronic bleeding or depression. Foresters argues that "two[1] physicians diagnosed [Mr. Zell-Breier] as having chronic bleeding and depression,"[2] (Doc. 47 at 14), and that he therefore made a material misrepresentation by answering "no" to these questions. Plaintiff argues that these physicians never "diagnosed" Mr. Zell-Breier as having "chronic bleeding" or "depression" within the meaning of those terms.

In Florida, the construction of an insurance policy is a question of law for the court. E.g., Storfer v. Guarantee Trust Life Ins. Co., 666 F.3d 1277, 1279 (11th Cir. 2012); Jones v. Utica Mut. Ins. Co., 463 So. 2d 1153, 1157 (Fla. 1985). "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 569-70 (Fla. 2011) (quoting Travelers Indem. Co. v. PCR, Inc., 889 So. 2d 779, 785 (Fla. 2004). "[T]he traditional rule followed in Florida . . . requires that policy language be read as it would be understood by reasonable people, i.e.[,] given its plain and ordinary meaning." State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., 678 So. 2d

---

[1] Foresters does not argue that both physicians diagnosed Mr. Zell-Breier as having both conditions, but rather that one of the physicians diagnosed him as having both chronic bleeding and depression and that the other physician diagnosed him as having chronic bleeding.

[2] Foresters acknowledges that these physicians did not treat Mr. Zell-Breier for either condition. (Zver Dep., Doc. 31, at 37, 51; see also Def.'s Reply at 2, 6).

397, 401 (Fla. 4th DCA 1996); see also, e.g., Auto-Owners Ins. Co. v. Above All Roofing, LLC, 924 So. 2d 842, 847 (Fla. 2nd DCA 2006).

The first physician, Dr. Hotchner, has testified that he never diagnosed Mr. Zell-Breier as having chronic bleeding or depression. (Hotchner Dep., Ex. K to Doc. 47, at 152, 157). Dr. Hotchner performed a phone consultation with Mr. Zell-Breier on January 18, 2006 and recorded in his notes that Mr. Zell-Breier reported a history of "blood in the stool often, if he were to eat bad[ly] or eat sugar" and "[s]ome depression . . .[he] [h]ad the last two years burdens with his home finances, lots of stress . . . [s]ome hopelessness at times." (Hotchner Dep. at 112-14). Dr. Hotchner explained that he did not deem this information to be a diagnosis, but rather recorded it in a section of his notes titled "S," for "subjective," to indicate that the information is "what the patient tells [him] is going on."[3] (Id. at 37, 107-14). He also wrote "colitis" and "andropause" in the "Assessment" section of his notes and explained that he diagnosed Mr. Zell-Breier with colitis and andropause "based on the history that was provided to [him] by Mr. Zell-Breier." (Id. at 158-59). Dr. Hotchner further explains that the "blood in stool" as reported by Mr. Zell-Breier was "intermittent bleeding when he ate bad[ly]," (id. at 154), and that he did not consider it to be "clinically significant," (id. at 73). He also concluded that Mr. Zell-Breier's feelings of depression were merely "normal stresses." (Id. at 158).

The second physician, Dr. Galceran, also states that she never diagnosed Mr. Zell-Breier has having chronic bleeding or depression. (Galceran Aff., Doc. 34-9, ¶¶ 5-7). Dr. Galceran had Mr. Zell-Breier complete a medical intake questionnaire during an

---

[3] Dr. Hotchner explained that it is his standard practice to organize his medical notes according to the categories of "S" for "subjective," "O" for "objective," "A" for "assessment," and "P" for "Plan." (Hotchner Dep. at 147-48).

5

office visit on September 11, 2000.  (Doc. 47-29).  In that questionnaire, Mr. Zell-Breier checked "yes" to the question "[a]re you bothered with . . . [b]loody or [t]arry [s]tools" and he explained on the questionnaire that he had blood in his stool "after eating badly." (Id.).  Dr. Galceran also indicated in her notes that Mr. Zell-Breier "[i]ntermittently . . . has noted some bright red blood per rectum."  (Id.).

Foresters argues that the physicians need not have reached any particular conclusion about Mr. Zell-Breier's self-reported bleeding and depression to count as "having diagnosed" him with chronic bleeding and depression.  Foresters claims that the phrase "diagnosed as having" can only mean that "a symptom or condition which the patient had has been identified," as opposed to the phrase "diagnosed with," which Foresters says "can mean that a person has a condition and that a determination as to the nature and cause of the symptoms was made." (Reply at 3).  What matters, Foresters argues, is that Mr. Zell-Breier told the physicians he had feelings of depression and blood in his stool and that the physicians "took into consideration [Mr. Zell-Breier's] statements . . . in diagnosing [him]."  (Doc. 47 at 15 (emphasis omitted)).

These arguments cut against the plain meaning of the Application questions at issue and are without merit.  First, in common parlance, a physician "diagnoses" a patient as having a condition when the physician recognizes the patient as having the condition based on the patient's signs and symptoms.  See Merriam–Webster's Collegiate Dictionary 344 (11th ed. 2007) (defining "diagnose" as "to recognize (as a disease) by signs and symptoms;" "to diagnose a disease or condition in;" "to analyze the cause or nature of;" "to make a diagnosis"); Oxford English Dictionary Online, http://www.oed.com (last visited December 6, 2012) (defining "diagnose" as "[t]o make a

6

diagnosis (of a disease), to distinguish and determine its nature from its symptoms; to recognize and identify by careful observation"). It is therefore obvious that a physician cannot be said to have diagnosed a patient as having a condition merely by virtue of "taking into consideration" the patient's self-reported symptoms of that condition. The physician must conclude that the patient actually has the condition and must do so on the basis of analyzing or observing the patient's signs and symptoms.

Foresters nonetheless argues that Mr. Zell-Breier's physicians accepted as true[4] his report of having blood in his stool after eating badly, (Hotchner Dep. at 167-68; Galceran Dep. at 25-26), and that such bleeding is by itself within the plain meaning of "chronic bleeding." This argument fails for two reasons. First, as explained above, a physician who merely accepts a patient's medical history as true does not thereby "diagnose" the patient with the medical conditions the patient reports to have. Second, Mr. Zell-Breier's report of bloody stool often *after eating badly* does not entail "chronic" bleeding in the ordinary sense of the word. See Merriam-Webster's Collegiate Dictionary at 221 (11th ed. 2007) (defining "chronic" in relevant part as "marked by long duration or frequent recurrence: not acute" and "always present or encountered; *esp*: constantly vexing, weakening, or troubling"); Oxford English Dictionary Online, http://www.oed.com (last visited December 6, 2012) (defining "chronic" in relevant part as "[o]f diseases, etc.: Lasting a long time, long-continued, lingering, inveterate; opposed to *acute*").

---

[4] Foresters points to testimony that both physicians admitted having no reason to doubt the information Mr. Zell-Breier provided and that they took that information into account when diagnosing him. (Doc. 47 at 15, 17-18; Hotchner Dep. at 167-168; Galceran Dep. at 25-26).

Foresters argues in the same vein that Dr. Hotchner "diagnosed" Mr. Zell-Breier as having "depression" by accepting as true that he had felt "some depression" and "some hopelessness" in connection with two years of financial problems. This argument fails for reasons similar to those explained above. Again, merely accepting a patient's medical history as true does not in itself constitute diagnosing the patient. Also, the Court concludes that the word "depression" in the question refers to depression in the sense of a medical disorder and the evidence establishes that Dr. Hotchner determined that Mr. Zell-Breier did not have such a disorder.

The word "depression" has two ordinary meanings in common usage that are relevant here. Depression can mean both "a state of feeling sad: dejection" and "a psychoneurotic or psychotic disorder marked [especially] by sadness, inactivity, difficulty in thinking and concentration, a significant increase or decrease in appetite and time spent sleeping, feelings of dejection and hopelessness, and sometimes suicidal tendencies." Merriam-Webster's Collegiate Dictionary at 335 (11th ed. 2007); see also Oxford English Dictionary Online, http://www.oed.com, (last visited December 6, 2012) (defining "depression" in relevant part as both "[t]he condition of being depressed in spirits; dejection" and "a sign of psychiatric disorder or a component of various psychoses, with symptoms of misery, anguish, or guilt accompanied by headache, insomnia, etc.").

Plaintiff argues that the Application refers to the "clinical" sense of depression, (Doc. 34 at 13), and Foresters has not challenged that argument. In any event, it is clear from the question's context that "depression" refers to the sense of the word as a medical disorder—the question is located in a section titled "Medical Questions" and

specifically asks whether the applicant has been diagnosed by a "licensed medical practitioner or provider." Moreover, any ambiguity arising from the two different ordinary meanings must be construed against Foresters. See Mercury Ins. Co. of Fla. v. Markham, 36 So. 3d 730, 733 (Fla. 1st DCA 2010) (noting that any "ambiguity must be construed against the insurer").

In sum, there is no genuine dispute of fact as to whether Mr. Zell-Breier's physicians ever diagnosed him as having chronic bleeding or depression. Mr. Zell-Breier told Dr. Hotchner that he often had blood in his stool after he ate badly and that he felt depressed in connection with his financial problems. Dr. Hotchner took this information into consideration, concluded that the depression and bleeding were "normal" and not "clinically significant," (Hotchner Dep. at 73, 158), and in turn diagnosed Mr. Zell-Breier with colitis and andropause. Likewise, Dr. Galceran recorded Mr. Zell-Breier's complaint about having blood in his stool after eating badly, (Doc. 47-29), and there is no evidence that Dr. Galceran ever concluded that Mr. Zell-Breier had chronic bleeding. Both physicians also explicitly state that they never diagnosed Mr. Zell-Breier with either condition. (Hotchner Dep. at 152, 157; Galceran Aff. ¶¶ 5-7).

Accordingly, there is no genuine dispute of fact as to whether Mr. Zell-Breier's application for life insurance contained misrepresentations. Because there is no genuine dispute about the alleged misrepresentations, the Court does not reach the question of the whether such alleged misrepresentations would have been material. Plaintiff's Motion for Summary Judgment must therefore be **GRANTED** with respect to liability and Foresters's Cross-Motion for Summary Judgment must be **DENIED**.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Foresters's Cross-Motion for Summary Judgment (Doc. 47) is **DENIED**.

2. Plaintiff's Motion for Summary Judgment (Doc. 34) is **GRANTED** with respect to liability for breach of contract.

3. All other pending motions are **DENIED** as moot.

**DONE** and **ORDERED** in Orlando, Florida on December 7, 2012.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record